IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| vs. | § § | CRIMINAL NO. 5:23-CR-00575 |
| HOMERO TOVAR | § § | |

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

Defendant HOMERO TOVAR pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), moves to dismiss the Indictment, which charges Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1), Illegal Possession of a Machine Gun in violation of 18 U.S.C. § 922(o), and Possession of an Unregistered Machine Firearm 26 U.S.C. § 5851.  The Court should dismiss the Indictment because 18 U.S.C. § 922(g)(1), 18 U.S.C. § 922(o), and 26 U.S.C. § 5861(d) are unconstitutional under the Second Amendment to the Constitution pursuant to the standard announced by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), and would show:

**I. BACKGROUND**

On April 18, 2018, Mr. Tovar was arrested by ATF agents for Possession of Firearm by a Felon, when a Laredo Police Officer found a firearm and ammunition in a vehicle owned by Mr. Tovar.  This firearm is the corpus of all three charges in the indictment.

**II. LEGAL STANDARD**

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise, by pretrial motion, any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1).  If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion.  *United States v. Flores*, 404 F.3d 320, 325

(5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *Flores*, 404 F.3d at 325.

### III.  LEGAL BACKGROUND

The statutes charged, 18 U.S.C. § 922(g)(1), 18 U.S.C. § 922(o), and 26 U.S.C. § 5861(d) are unconstitutional. The Second Amendment protects "the right of the people to keep and bear arms." U.S. Const. amend. II. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The Supreme Court's decision in *Bruen* set out "the standard for applying the Second Amendment" as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). In so holding, the Supreme Court rejected lower courts' use of means-end scrutiny in Second Amendment cases. *See id.* at 2125–27 & n.4 (abrogating *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012)). "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

And "when it comes to interpreting the Constitution, not all history is created equal." *Bruen*, 142 S.Ct. at 2136. Courts must "guard against giving postenactment history more weight than it can rightly bear." *Id.* Historical evidence from the late nineteenth century and the twentieth century "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154 & n.28; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2267 (2022) (stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact").

## IV. ARGUMENT

### A. The Indictment

The Indictment charges the following:

> **Count 1 Felon In Possession of a Firearm: 18 § 922(g)(1)** makes it illegal for anyone that has been convicted of a crime punishable by a crime exceeding one year to possess a firearm or ammunition.
>
> **Count 2 Illegal Possession of a Machine Gun: 18 § 922(o)**) makes it illegal for anyone to transfer or possess a machine gun.
>
> **Count 3 Possession of an Unregistered Firearm: 26 U.S.C. § 5861(d)** makes it illegal for a person possess a machine gun that is not registered to him with the National Firearms Registry.

### B. The Second Amendment's Plain Text Covers These Charges

Applying *Bruen*'s standard, the Second Amendment's plain text covers the "possess[ion]" of a firearm that Sections 922(g)(1), 922(o) and 26 U.S.C. § 5861(d) criminalize. The term "'[k]eep arms' was simply a common way of referring to possessing arms." *Heller*, 554 U.S. at 583.

And Mr. Tovar is one of "the people" under the Second Amendment's plain text. *See Heller*, 554 U.S. at 581 (noting that Second Amendment right "belongs to all Americans"); *id.* at 580 (quoting prior decision describing "the people" as the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered

3

part of that community"); *see also, e.g.*, U.S. Const. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. Const. amend. IV (using "the people" in Search-and-Seizure Clause). *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581).

Because the Second Amendment's plain text covers Mr. Tovar's conduct, the Second Amendment "presumptively protects" that conduct. *Bruen*, 142 S. Ct. at 2129–30.

### C. Application Is Not Consistent With Our Nation's Historical Tradition of Firearm Regulation

The prosecution cannot meet its burden of establishing that any of the three charges, as applied to Mr. Tovar, are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. Indeed, the Fifth Circuit has stated that "the federal felony firearm possession ban, 18 U.S.C. § 922(g)(1), 'bears little resemblance to laws in effect at the time the Second Amendment was ratified,' as it was not enacted until 1938; was not expanded to cover non-violent felonies until 1961; and was not re-focused from receipt to possession until 1968." *Nat'l Rifle Ass'n of Am.*, 700 F.3d at 196, *abrogated by Bruen*, 142 S. Ct. 2111 (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)).

Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); *see, e.g.*, *id.* at 453–64 (surveying history); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 914 (3d Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second

Amendment? No, they were not."); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws.").

Numerous scholars, too, have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." *See, e.g.*, Larson, *supra*, at 1374; C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).

Against that backdrop, the prosecution cannot meet its burden of establishing that this application of the charges in the indictment are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. Indeed, to uphold this application of Section 922(g)(1), the prosecution must establish a historical "*tradition*"—a robust record of regulations demonstrating an accepted and enduring restriction on the Second Amendment right. *See, e.g.*, *id.* at 2156 (demanding a "broad tradition," not "outlier" regulations). And because the charged in the indictment do not "addresses a general societal problem that has persisted since the 18th century," *Bruen* instructs that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. So too "if earlier generations addressed the societal problem, but did so through materially different means." *Id.* The inquiry may also turn upon "how" and "why" historical regulations burdened the Second Amendment right. *Id.* at 2132–33.

Because the prosecution cannot establish the requisite historical tradition, all counts in the indictment are unconstitutional as applied to Mr. Tovar.

### D. *Bruen*'s Holding Governs

*Bruen*'s holding must prevail over *Heller*'s dictum. The Supreme Court in *Heller* did "not undertake an exhaustive historical analysis" when it stated—in dictum, and without citation—that

5

"nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which the Court described in a footnote as "presumptively lawful." *Heller*, 554 U.S. at 626–27 & n.26; *see McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010) (plurality) (same); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting same). The Fifth Circuit has described this language as "[d]icta in *Heller*." *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *accord, e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 686–87 (6th Cir. 2016) (en banc); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

*Bruen* "did not attempt to bolster [the] reasoning"—or lack of it—underlying *Heller*'s dictum. *See Dobbs*, 142 S. Ct. at 2271. Instead, *Bruen* now holds that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively *protects* that conduct." 142 S. Ct. at 2126 (emphasis added). What's more, the Court holds that "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if" the government meets its burden, the Court holds, may a court uphold a regulation as constitutional. *Id. Bruen*'s holding must prevail over *Heller*'s footnote-consigned dictum. *See Heller*, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.").

So too must *Bruen*'s holding prevail over the Fifth Circuit's earlier analysis. In a 2001 case involving a prosecution under Section 922(g)(8) the Fifth Circuit suggested that certain "narrowly tailored" exceptions to the Second Amendment are permissible. *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001); *see United States v. McGinnis*, 956 F.3d 747, 755 (5th Cir. 2020) (explaining that *Emerson* "presumably . . . appl[ied] some form of means-end scrutiny *sub silentio*").

6

The court in *Emerson* then cited three sources from the 1980s for the proposition that it is "clear that felons . . . may be prohibited from possessing firearms." 270 F.3d at 226 n.21, 261.

But *Bruen* rejected means-end scrutiny. *Bruen*, 142 S. Ct. at 2125–27. And since *Emerson*, the Fifth Circuit, other courts and jurists, numerous scholars, and the United States itself have reached the opposite historical conclusion. The Fifth Circuit rejected its holding *in Emerson, Id.*, following the *Bruen* decision and must now rethink the proposition possession of firearms. See *United States v. Rahimi*, 21-1001 (5th Cir. February 2, 2023), holding that Section 922(g)(8) violated the Second Amendment. The Third Circuit has just held that Section 922(g)(1) violated the Second Amendment. See *United States v. Range*, 21-2835 (3rd Cir. June 6, 2023). And a District Court in the Southern District of Mississippi has reached the same conclusion, holding that Section 922(g)(1) violated the Second Amendment. See *United States v. Bullock*, 3:18-CR-165 (Decided June 28, 2023).

What's more, *Bruen* now instructs that it is the government's burden to "affirmatively prove" that any regulation is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," which the United States cannot do in this case. *Bruen*, 142 S. Ct. at 2127.

## V. CONCLUSION

Under *Bruen's* "standard for applying the Second Amendment," the Second Amendment's plain text covers Mr. Tovar's possession of a firearm under all three counts of the indictment. The prosecution cannot meet its burden of demonstrating that this application of the laws charged are "consistent with the Nation's historical tradition of firearm regulation." And so these charges are unconstitutional as applied and on their face.

## VI. PRAYER

The Defendant respectfully requests that the Court dismiss the Indictment.

Respectfully submitted,

**BALLI & BALLI LAW FIRM, LLP**
P.O. Box 1058
Laredo, Texas 78042-1058
Tel: (956) 712-4999
Fax: (956) 724-5830

By: */s/ Roberto Balli*
ROBERTO BALLI
SBN: 00795235
FBN: 22668

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify and attest that all parties in interest listed below have received a true and correct copy of this motion by electronic mail from the Clerk of Court.

*/s/ Roberto Balli*
ROBERTO BALLI

## CERTIFICATE OF CONFERENCE

I, the undersigned conferred with Assistant United States Attorney Steven Scott Chamberlin, about the filing of this motion who is opposed to the relief sought herein.

*/s/ Roberto Balli*
ROBERTO BALLI