United States District Court
Southern District of Texas
**ENTERED**
November 22, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 5:23-CR-575 |
| | § | |
| HOMERO TOVAR | § | |

**ORDER**

The United States Magistrate Judge has conducted a hearing (Min. Ent. Sep. 1, 2023) on Defendant's motion to suppress statement (Dkt. No. 39) and issued a Report and Recommendation (the "Report") (Dkt. No. 64). In the Report, the Magistrate Judge recommends that Defendant's motion to suppress (Dkt. No. 39) be denied. Defendant timely filed objections to the Report (Dkt. No. 67) For the reasons below, the Report (Dkt. No. 64) is **ADOPTED IN PART** and **MODIFIED IN PART**. Defendant's motion to suppress (Dkt. No. 39) is **DENIED**.

## I. BACKGROUND

On April 18, 2023, at 8:41 p.m., the Laredo Police Department responded to a call about an active fight on a residential street (Dkt. No. 64 at 2). Witnesses at the scene said that Defendant had a gun concealed inside a black Dodge Charger parked on the street (*id.* at 2–3). Defendant told officers that a dog had bitten him, and paramedics later said that he had lost consciousness at some point during the fight (*id.* at 2, 5). At the suppression hearing, Defendant testified that during the fight he was beaten with metal pipes and bricks and was stomped on (*id.* at 4).

At 8:44 p.m., officers recovered a "Glock Switch" machine gun with a large-

capacity magazine loaded with 28 live rounds from the Dodge Charger (*id.* at 3; Dkt. Nos. 18 at 1, 35 at 2). Officers handcuffed Defendant and escorted him to a squad car (Dkt. No. 64 at 3). Defendant was able to walk without trouble, although he was short of breath (*id.*). Below are photos of Defendant from two angles taken from officers' body-worn cameras shortly after they encountered him.[1] One second later, Defendant gets up on his own and walks to the squad car.[2]



At about 8:48 p.m., while Officer Mauricio Chaires was asking Defendant some questions about what had happened, a vehicle drove past police cars which were blockading the street (*id.* at 4). Officers approached the car with their guns drawn (*id.*). They determined that the driver was Defendant's relative (*id.*). Officer Chaires briefly left Defendant in the squad car to investigate, and when Chaires returned, Defendant did not mention the incident or ask why he had left (*id.*).

Around 9:00 p.m., paramedics arrived on scene and examined Defendant (*id.*

---

[1] *See* Govt. Exh. 2, Officer Jesus Ramirez body-worn camera at 20:44:14; Govt. Exh. 3, Officer Mauricio Chaires body-worn camera at 20:44:14.
[2] *See* Govt. Exh. 3, Officer Mauricio Chaires body-worn camera at 20:44:15.

at 5). They reported to officers that Defendant was fairly stable, although his blood pressure and heart rate were "a little bit elevated." (*id.*). Officer Chaires then escorted Defendant back to the patrol car.[3]

Several minutes later, at about 9:13 p.m., Officer Roberto Cruz spoke with Defendant, and asked him, among other questions, what day it was (Dkt. No. 64 at 6). Defendant incorrectly said it was Monday rather than Tuesday (*id.*).

Officer Cruz read Defendant his *Miranda* rights and asked if he understood them (*id.*). Defendant nodded and said he understood (*id.*). Defendant also told Officer Cruz he was thirsty several times (*id.*). Officer Cruz said he would get Defendant some water but proceeded to question Defendant (*id.* at 6–7).

Officer Cruz asked Defendant who owned the gun officers had recovered (*id.*). Defendant said it was his gun (*id.* at 7). This is the statement that Defendant seeks to suppress (Dkt. No. 39).

## II.   LEGAL STANDARDS

### A. *De Novo* Review of Magistrate's Report and Recommendation

When a party objects to a magistrate judge's report, the district court reviews the objected-to portions *de novo*. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). The district court reviews uncontested portions of a magistrate judge's report for clear error. *U.S. v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989); *Hack v. Wright*, 396 F. Supp. 3d 720, 730 (S.D. Tex. 2019).

---

[3] *See* Govt. Exh. 4, Officer Mauricio Chaires body-worn camera at 21:04:27.

### B. *Miranda* Rights and Waiver

After officers interrogate a defendant who is in custody, the prosecution may not use any of the defendant's statements in the interrogation unless it first demonstrates that (1) the officers advised the defendant that he has the right to remain silent, (2) any statement he makes may be used as evidence against him, and (3) he has the right to the presence of an attorney, whether retained or appointed. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

If a defendant waives these rights and speaks to the police, the prosecution must show that the waiver was voluntary, knowing, and intelligent. *Id*. The voluntariness of a *Miranda* waiver is determined by looking at the totality of the circumstances surrounding the interrogation. *U.S. v. Cardenas*, 410 F.3d 287, 292–93 (5th Cir. 2005). A defendant knowingly and intelligently waives his rights if he waives them with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

### C. Due Process Clause

*Miranda* repudiated the former Due Process Clause voluntariness test, which held that the defendant's statements were inadmissible at trial if the totality of the circumstances showed the defendant involuntarily made the statement. *U.S. v. Seale*, 600 F.3d 473, 481–82 (5th Cir. 2010). Under "rare" circumstances, such as where the Government reads the defendant his *Miranda* rights and then tortures the defendant to obtain a confession, due process voluntariness analysis may still have relevance. *Id.* at 482 n.6 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)).

## III.   ANALYSIS

### A. Defendant's Objections to the Report

Neither of the parties dispute that Defendant's statement was made during a custodial interrogation[4] – Officer Cruz questioned Defendant about his involvement in a potential crime while he was handcuffed in the back of a patrol car. *See U.S. v. Romero-Medrano*, 207 F. Supp. 3d 708, 712–14 (S.D. Tex. 2016) (finding custodial interrogation where defendant was questioned about a crime in the back of a patrol car). Therefore, the suppression analysis hinges upon whether Defendant validly waived his *Miranda* rights before he told Officer Cruz that the recovered firearm belonged to him.

Defendant objects to the Report's finding that Defendant validly waived his rights (Dkt. No. 64 at 21), arguing that the officers engaged in "exploitative and inhumane conduct" and "extreme psychological persuasion" which induced Defendant to waive his rights (Dkt. No. 67 at 2, 4). Defendant argues that officers:

- Knew Defendant had been rendered unconscious due to a head injury (*id.* at 1).
- Knew Defendant had been bitten by a dog. (*id.*).
- Did not give Defendant water when he asked for it (*id.* at 1–2).
- Did not provide medical treatment (*id.*).
- Knew that Defendant said it was a Monday when it was a Tuesday (*id.* at 2).

Based on the facts above, Defendant contends that officers obtained his confession in violation of *Miranda* and his due process rights (*id.* at 5).

---

[4] The Government states in its brief, "the custodial interrogation by Officer Cruz lasted a total of four minutes." (Dkt. No. 43 at 8).

### B. Defendant's *Miranda* Waiver Was Valid.

1. *Defendant Implicitly Waived His* Miranda *Rights.*

In his Report, the Magistrate Judge notes that Defendant speaks and understands both English and Spanish, and asked Officer Cruz to read him his *Miranda* rights in English (Dkt. No. 64 at 18). After Officer Cruz read Defendant his rights, he asked Defendant whether he understood them (*id.* at 19). Defendant nodded and said "yes," and then answered Officer's Cruz's questions (*id.*). The Report finds that, although Defendant did not explicitly waive his rights, Defendant's course of conduct amounted to an implicit waiver of his rights, citing *Berghuis v. Thompkins*, 560 U.S. 370, 384–386 (2010) (a *Miranda* waiver may be implied through the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver) (citation omitted).

Defendant's conduct demonstrates that he understood his rights and then implicitly waived them by speaking to Officer Cruz. *See U.S. v. Duke*, 858 F. App'x 770, 771 (5th Cir. 2021) ("We reject [defendant's] argument that he never expressly waived his *Miranda* rights, as a valid waiver may be 'implied from all the circumstances.'" (Quoting *Berghuis*, 560 U.S. at 383–84)). Defendant does not object to the Report's finding that he implicitly waived his *Miranda* rights, and the Court concurs with the Magistrate Judge's finding.

2. *Defendant's* Miranda *Waiver Was Voluntary.*

For a defendant's waiver of his *Miranda* rights to be voluntary, it must have been the result of a free and deliberate choice, rather than intimidation, coercion, or

deception. *U.S. v. Alvarado-Palacio*, 951 F.3d 337, 341 (5th Cir. 2020) (citation omitted). In making this determination, courts look to the totality of the circumstances surrounding the interrogation. *Id.*

As the Magistrate Judge states in his Report, there was nothing coercive in the officers' conduct here (Dkt. No. 64 at 12–15). Despite Defendant's assertions to the contrary, paramedics on scene provided a medical checkup on Defendant prior to any questioning (*id.* at 5). They said Defendant was "fairly stable," with a slightly elevated heart rate and blood pressure (*id.*). Defendant was ambulatory and remained standing throughout the medical check (*id.*). Nothing indicated to officers that Defendant was so mentally impaired that he was incapable of making a voluntary *Miranda* waiver.

Further, officers did not engage in conduct that demonstrates that they were trying to exploit Defendant's condition and coerce him to waive his rights. Officers Chaires and Cruz were polite and non-threatening when they spoke with Defendant (Dkt. No. 64 at 17). *Cf. Colorado v. Connelly*, 479 U.S. 157, 164–65 (1986) (discussing, as examples of police overreaching, interrogations (a) of an insane defendant for over eight hours, and (b) in which a defendant was drugged with a truth serum).

Defendant claims the police coerced his confession when they pointed their guns at his relative who drove onto the scene past a police blockade. This argument is meritless. Although officers drew their weapons at a car that Defendant's relative was driving, the evidence does not show Defendant was aware of the car or who was

in it.[5] The officers were not trying to coerce Defendant's confession when they pointed their guns at the car – they were responding to a potential threat.

Although Defendant testified that he was beaten with metal pipes and bricks during the fight, the Court does not find his testimony credible, given that Defendant's injuries were not visible in the videos taken from the officers' body-worn cameras. Even if a dog bit Defendant and he lost consciousness at some point in the fight, Defendant appeared coherent and responsive in his interactions with law enforcement (Dkt. No. 64 at 16). This finding is supported by the fact that paramedics cleared Defendant as stable before Officer Cruz interrogated Defendant (*id.*).

Defendant also claims that officers deliberately withheld water to prompt him to confess (Dkt. No. 39 at 6). Defendant told Officer Cruz that he was thirsty several times, and Officer Cruz said he would get Defendant some water, but did not do so prior to asking Defendant whether he owned the recovered gun (*id.* at 6–7).

However, Defendant's desire for water is not enough to override the voluntariness of his *Miranda* waiver. And Defendant's argument that officers coerced his confession by withholding water fails, given that Officer Cruz said that he would get Defendant some water. The interrogation was brief, and there was no reason for Defendant to think Officer Cruz would withhold water if he did not confess.

---

[5] *See* Govt. Exh. 3, Officer Mauricio Chaires body-worn camera at 20:47:53–20:50:00. The incident with Defendant's relative driving past the police blockade took place at a distance from where Officer Chaires questioned Defendant, and it is unclear from the body-worn camera whether Defendant's relative's car was even visible from where Defendant was situated. Defendant at no time asked Officer Chaires about the car or indicated that he was aware of who was in it.

In short, the totality of the circumstances indicates no police overreach, and leads to the conclusion that Defendant voluntarily waived his *Miranda* rights and confessed to ownership of the gun.

### 3. *Defendant's* Miranda *Waiver Was Knowing and Intelligent.*

A defendant's *Miranda* waiver was knowing and intelligent if the totality of the circumstances show that it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Relevant factors in the court's analysis include the defendant's age, level of education, intelligence, and familiarity with the criminal justice system. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

As the Magistrate Judge writes in his Report, the Defendant here is a twenty-seven year-old man who completed high school through the eleventh grade (Dkt. No. 64 at 18). This demonstrates an appropriate age and level of intelligence for a defendant to waive his rights knowingly and intelligently. *See James v. Cain*, 468 F. App'x 401, 403 (5th Cir. 2012) (state court did not err in finding mentally handicapped defendant made a knowing and intelligent waiver of his *Miranda* rights). Defendant is familiar with the criminal justice process from numerous arrests and two prison sentences, indicating that he knew the consequences of waiving his rights (*id.*).

When Officer Cruz asked Defendant if he understood his rights, Defendant nodded and said, "yes." (*id.* at 19). During the hearing, Defendant testified that he told Officer Cruz he understood his rights (*id.*). He speaks English and Spanish, and asked Officer Cruz to read his *Miranda* rights in English, which Officer Cruz did (*id.*).

Officer Cruz asked Defendant three times if Defendant understood his rights and wanted to talk to Officer Cruz (*id.* at 6). Defendant did not refuse to talk or stop the interview (*id.* at 19).

The totality of the circumstances indicates that Defendant understood the consequences of his decision to talk to Officer Cruz, knowingly and intelligently waiving his *Miranda* rights prior to confessing to owning the gun.

### C. Defendant's Confession Was Not Obtained in Violation of the Fifth Amendment's Due Process Clause.

Defendant argues that under the totality of the circumstances, his confession was obtained in violation of the Fifth Amendment's Due Process Clause, citing as supporting authority only *Mincey v. Arizona*, 437 U.S. 385 (1978) (Dkt. No. 39 at 7). However, the Court agrees with the Report's conclusion that *Mincey* is inapposite (Dkt. No. 64 at 22), as the facts surrounding the defendant's confession in that case were far more extreme.

In *Mincey*, the defendant had been shot and seriously wounded. *Id.* at 396. He was taken to a hospital's intensive care unit, where medical staff drugged him and inserted a catheter, as well as tubes into his nose and throat. *Id.* A detective then interrogated the defendant for four hours, with breaks only when he lost consciousness. *Id.* at 396, 400–01. The detective ignored the defendant's pleas for the interrogation to stop so he could talk to a lawyer. *Id.* at 396. The defendant could not talk and instead had to write answers down, some of which were incoherent. *Id.* at 396, 398–99. The Supreme Court found that the Fourteenth Amendment's Due Process Clause barred the admission of the defendant's confession at trial. *Id.* at 402.

By contrast, Defendant here was detained by officers for approximately thirty-three minutes prior to confessing, and the interrogation itself lasted four minutes (Dkt. No. 64 at 23). Paramedics determined Defendant was stable prior to his confession (*id.*). He was coherent in his responses and did not request a lawyer (*id.*). The fact that Defendant said it was a Monday when it was a Tuesday hardly shows he was suffering from confusion like that of the *Mincey* defendant.

The Court modifies the Report's statement that "[t]he legal basis for Defendant's claim that his statements were involuntary stems from the Fourteenth Amendment's Due Process Clause, which provides in pertinent part: '[n]o person … shall … be deprived of life, liberty, or property, without due process of law.'" (Dkt. No. 64 at 21). Defendant brought his claim under the Fifth Amendment's Due Process Clause (Dkt. No. 39 at 7). The Fourteenth Amendment does not apply to the federal government. U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law.").

Further, the Court adds to the Report's reasoning. In *Seale*, the Fifth Circuit held that *Miranda* repudiated the due process voluntariness test, shifting the focus for admitting statements to the Fifth Amendment's right against self-incrimination and the Sixth Amendment's protections. 600 F.3d at 481–82 (*Miranda* "clear[ly] repudiat[ed] … the totality of the circumstances test."). While the Fifth Circuit stated that voluntariness issues "may have relevance post-*Miranda*," their relevance is limited to "rare" circumstances. *Id.* at 482 n.6 (citing *Berkemer v. McCarty,* 468 U.S. 420, 433 n.20 (1984)). "For example, after giving a *Miranda* warning, the government

could not torture a defendant and coerce a confession and then argue that it is admissible because the warnings were given." *Seale*, 600 F.3d at 482 n.6.

Plainly, the circumstances of Defendant's confession do not approach anything like torture. Defendant was treated reasonably and respectfully by the police. This is not a "rare" case in which the Due Process Clause could bar the Defendant's statements from being admitted at trial. *Berkemer*, 468 U.S. at 433 n.20.

## IV. CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** and **MODIFIES IN PART** the Magistrate Judge's Report and Recommendation (Dkt. No. 64). The Defendant's motion to suppress his statements (Dkt. No. 39) is **DENIED**.

It is so **ORDERED**.

**SIGNED** November 21, 2023.

Marina Garcia Marmolejo
United States District Judge